U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY 1 5 2006

ROBERT H. SHEMWELL, CLERK
BY _____
          DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

CHRISTI CHERAMIE                    CIVIL ACTION NO.06-0165

vs                                  JUDGE DRELL

WARDEN,L.C.I.W.                     MAGISTRATE JUDGE KIRK

AMENDED PETITION FOR WRIT OF HABEAS CORPUS
AND MEMORANDUM

Before this Honorable Court is a petition for writ of habeas corpus pursuant 28 U.S.C. 2254 filed January 27,2006 by pro se' petitioner,Christi Cheramie who now amends by Order of this Court filed April 21,2006. Petitioner is in the custody of the Louisiana Department of Corrections,at Louisiana Correctional Institute for Women serving a life sentence imposed against her at the age of 16 years old for the conviction for the offense of second degree murder obtained by a guilty plea accepted and imposed in the Twelveth Judicial District Court in the Parish of Avoyelles,State of Louisiana.

PETITIONER STATED THAT PROCEDURES WERE UNCONSTITUTIONALLY CONSTRUTED TO OBTAIN A GUILTY PLEA/CONVICTION

IN VIEW THAT PETITIONER STANDS AS A JUVENILE DEFENDANT AT THE TIME OF THIS JUDGEMENT OF CONVICTION, JUNE 22,1994. ALSO THAT A JURISDICTIONAL "MATTER IS TO BE DETERMINED BY THE JUDGE ALONE WHO THROUGH PROCEDURES ,IN A CAPITAL CASE,DID NOT PROVIDE THE DEFENDANT,A JUVENILE BEING TRIED "AS AN ADULT, PROPER INFORMATION OF THE NATURE OF THE CHARGE OR THE CONSEQUENCE SHE WAS FACING "IF PROVEN BEYOND REASONABLE DOUBT.  THE DISTRICT COURT MISAPPLIED PROCEDURES IN A CAPITAL CASE TO INDUCE A GUILTY PLEA/CONVICTION AND PUNISHMENT MANDATED PROVISION FOR THE CONVICTION.

The Judge appointed counsel who with the court entered a not guilty plea BUT WAIVED THE FORMAL ARRAIGNMENT,the procedure required to inform any defendant of the nature of the charge and the consequenses "if proven "beyond a reasonable doubt,particularly in a Capital Case!  Further the court applied the procedure for information to be at the time of the procedure counsel with the State selected to impanel jurors. At the time the eighth juror was impaneled, Counsel with the State agreed. A guilty plea was infact induced. The State withdrew prosecution in the Capital Case.

PETITIONER STATES FURTHER,THE DISTRICT COURT,IN THE "SHADOW OF THE GRANTED JURISDICTION,THAT THE JUDGE ALONE DETERMINES A JURISDICTIONAL MATTER AND WHO AT THIS SAME TIME CONTINUES TO DEPART.

The Trial for second degree murder proceeded with appointed counsel entering a guilty plea for the juvenile defendant.The court Boykined the defendant of the second degree murder charge

To inform her that the sentence mandated is a life sentence without parole or suspension of sentence( otherwise for an adult offender) The Judge for the District Court in DEPARTURE proceeded to accept the guilt plea and impose sentence on a 16 year old for second degree murder,a non-capital offense. Boykin procedure did not inform or consider the fact that there stands a lesser sentence under the provisions for a juvenile. .This District Ctt did not have jurisdiction to accept a plea of guilt and impose sentence on a 16 year old for second degree murder, A NON-capital offense.

Petitioner consequently did not file a direct appeal. Explaining that the procedures that otherwise inform a defendant of having "a right to appeal or initial time to appeal in form to withdraw a plea and understand the consequence of that plea, were taken in the sentence procedure at which time Counsel was addressed directly by the Court for a time and Counsel responded "waive".

Petitioner respectfully states that the claims presently raised were litigated in a procedural manner in the Twelveth Juditial Didtrict Court. That on September 17,1998 Judge William J.Bennett,who is the appointed counsel referred to in these claim forwarded informing New Counsel retained by petitioner, that the available Judges in the 12th JDC were associated with the Judgement and conviction of petitioner in June 22,1994;Requesting "grace period be reckoned (required documents attached)

Petitioner in view of being time barred respectfully request that her claims be permitted for review under the doctrine of "equitable tolling" (required documents attached)

Petitioner further states that these same facts were litigat igated in the courts of Louisiana, to the HIGHEST COUPT FOR APPLICATION FOR WRIT OF REVIEW, DENIED.February,2003.(attached)

Post conviction filed April,1999 pending for Ad Hoc appoint-ment. (attached)  IN THE 12th JDC.

Filed May 14,2001 a Motion to Withdraw Plea of Guilt and or Correct an Illegal Sentence. in the Twelveth JUdicial District Evidetiary hearing granted, denied August 1,2001.

Filed Writ of Review in the Third Circuit Court of Appeal no evidentiary hearing. denied Twas filed OctOBer 19,2001.

Filed Supervisory Writ of review in the LouisianaSupreme Ct; Denied;  KNOLL,J RECUSED. (attached) March 23,2001

RESPECTFULLY SUBMITTED BY ;

*Christi L Cheramie*

pro se'Petitioner,Christi Cheramie

LAW OFFICES OF

# WILLIAMS BOSHEA& EHLE , L.L.C.

A LIMITED LIABILITY COMPANY
*407 HUEY P. LONG AVENUE*
*GRETNA, LOUISIANA 70053*
TELEPHONE: (504) 361-0636
TELEFAX: (504) 361-4493
*and*
*4209 Canal Street*
*New Orleans, Louisiana 70119*
TELEPHONE: (504) 485-0226
TELEFAX: (504) 488-3318

WRITER'S DIRECT DIAL NUMBER:
(504) 361-0636

JAMES A. WILLIAMS
KEVIN V. BOSHEA
DAVIDSON S. EHLE, III

MICHELLE R. HESNI
Associate

July 29, 2000

Ms.  Rita Cheramie
20 Albert Jarrell Road
Carrier, Mississippi 39426

Re:    State of Louisiana vs.  Christy Cheramie

Dear Ms.  Rita:

Enclosed please find the materials in reference to Christy's case.  I will keep you  updated on her case as it progresses.  If you have any questions or concerns, please don't hesitate to contact my office.

With kind professional regards, I am

Sincerely,

Davidson S.  Ehle

DSE/tmh
Enclosures

*LAW OFFICES OF*

# EHLE & HESNI, L.L.C.

*A LIMITED LIABILITY COMPANY*
### 407 HUEY P. LONG AVENUE
### GRETNA, LOUISIANA 70053
TELEPHONE: (504) 366-2020
TELEFAX: (504) 366-2080

DAVIDSON S. EHLE, III                                          MICHELLE H. HESNI

May 29, 2001

Ms. Christy Cheramie #341629
Avoyelles Woman's Correctional Center
P.O. Box 340
Cottonport, Louisiana 71327

RE:    State of Louisiana v. Christie Cheramie

Dear Christie:

Please be advised that I received the enclosed letter from Judge Bennett.

Once I learn who the Judge Ad Hoc will be, I will let you know immediately.

Sincerely,

Ehle & Hesni, L.L.C.

Davidson S. Ehle, III

DSE/dbd



**COPY**

## TWELFTH JUDICIAL DISTRICT COURT
AVOYELLES PARISH COURTHOUSE
312 NORTH MAIN STREET
MARKSVILLE, LOUISIANA 71351

WILLIAM J. BENNETT
JUDGE, DIVISION B
P.O. BOX 84
MARKSVILLE, LA 71351

May 15, 2001

PHONE
(318) 253-9418
FAX
(318) 253-7997

Ms. Mary Duckert
Orders Paralegal
Supreme Court
State of Louisiana
1555 Poydras Street
Suite 1540
New Orleans, Louisiana 70112

Re:    State of Louisiana v. Christie Lynn Cheramie
       Criminal Docket No. 79,678-B - 12ᵗʰ JDC

Dear Ms. Duckert:

On September 17, 1998 I forwarded correspondence to you in reference to the above captioned matter requesting that I be recused from presiding over this matter due to my representation of Ms. Cheramie in the above matter at the time of the conviction. I was so recused.

Judge Kerry Spruill, Judge of Division A, was also recused in this matter due to his association with District Attorney's Office at the time of the prosecution of Ms. Cheramie. Judge Ted Broyles was appointed as Judge Ad Hoc to preside over the pending motions.

Thereafter, in April, 1999 Christie Cheramie filed an Application for Post-Conviction Relief and I again issued correspondence to you requesting the appointment of a Judge Ad Hoc. I believe that Judge Broyles was again so appointed.

Ms. Cheramie has now filed, on May 14, 2001 a "Motion to Withdraw Plea of Guilty and/or Correct Illegal Sentence and Incorporate Memorandum." Considering the previous filings and the previous recusal of myself and Judge Spruill, it is respectfully requested that a Judge Ad Hoc be appointed to preside over the recently filed motion. Please advise.

With kindest regards, I remain

Very truly yours,

WILLIAM J. BENNETT
12ᵀᴴ JUDICIAL DISTRICT COURT, JUDGE
DIVISION B

WJB/amh
cc:  Mr. Eddie Knoll
     Mr. Davidson Ehle, III

LAW OFFICES OF

# EHLE & HESNI, L.L.C.

**A LIMITED LIABILITY COMPANY**
*407 HUEY P. LONG AVENUE*
*GRETNA, LOUISIANA 70053*
TELEPHONE: (504) 366-2020
TELEFAX: (504) 366-2080

*[handwritten: Congratulations Christy. Thank ya LORD]*

DAVIDSON S. EHLE, III                                MICHELLE H. HESNI

*[handwritten: They DID this wrong address]*

June 18, 2001

Ms. Christy Cheramie #341629
Avoyelles Woman's Correctional Center
Post Office Box 340
Cottonport, Louisiana 71327

> **Re:    State of Louisiana vs. Christy Cheramie**

Dear Christie:

Enclosed please find the signed Show Cause Order setting your case for hearing on July 12, 2001 at 9:30 a.m. in Marksville, Louisiana.

Please call me at my new telephone number (504) 366-2020, my address is the same. It is important that we talk before July 12, 2001 because you will have to testify at the hearing. Your testimony will have to explain how your guilty plea was not knowingly, voluntarily and intelligently entered. Moreover, you will have to explain how you were prejudiced by entering the guilty plea. I am sure you have questions. I may not be able to visit with you face to face so that is why you must call me.

With best personal regards, I am,

Very truly yours,

EHLE & HESNI, L.L.C.

Davidson S. Ehle, III

DSE/dbd
c.c.:    Rita
Enclosures

*LAW OFFICE OF*

# EHLE & HESNI, INC.

*407 HUEY P. LONG AVENUE*
*GRETNA, LOUISIANA 70053*
TELEPHONE: (504) 366-2020
TELEFAX: (504) 366-2080

DAVIDSON S. EHLE, III                                         MICHELLE H. HESNI

October 26, 2001

Ms. Christie Cheramie #341629
Post Office Box 340
Cotton Port, Louisiana 71327

        RE:    State vs. Christie Cheramie

Dear Christie:

        Enclosed please find a copy of the Application for Supervisory Writ of Review in regards    .
to your case.

        With kind personal regards, I am,

                                    Very truly yours,

                                    EHLE & HESNI, INC.

                                    Davidson S. Ehle, III

DSE/dbd
cc: Rita Cheramie

Case 1:06-cv-00165-DDD     Document 9-2     Filed 05/15/2006     Page 8 of 61

# EHLE & HESNI, L.L.C.

A LIMITED LIABILITY COMPANY
**407 HUEY P. LONG AVENUE**
**GRETNA, LOUISIANA 70053**
TELEPHONE: (504) 366-2020
TELEFAX: (504) 366-2080

DAVIDSON S. EHLE, III                                                        MICHELLE H. HESNI

February 17, 2003

Ms. Christy Cheramie #341629
Avoyelles Woman's Correctional Center
P.O. Box 340
Cottonport, Louisiana 71327

RE:     State of Louisiana v. Christie Cheramie

Dear Christie:

It is with a sad and heavy heart that I write to you today. Enclosed please find the Louisiana Supreme Court Judgment denying your writ. I am very sorry that they did not agree with our position. I thought that because they had your case under consideration for so long that we would get at least a written opinion.

If you have any questions, which I know you will, please call me.

Sincerely,

EHLE & HESNI, INC.

Davidson S. Ehle III

DSE/gbe

12TH JUDICIAL DISTRICT COURT PARISH OF AVOYELLES

STATE OF LOUISIANA

| STATE OF LOUISIANA | | CRIMINAL DOCKET : |
|---|---|---|
| | 2001 MAY 14  A 8: 43 | |
| VERSUS | BOOK_____ PAGE_____ | # 79,678 B |
| CHRISTIE LYNN CHERAMIE | CLERK AND RECORDER AVOYELLES PARISH LA. | |

## MOTION TO WITHDRAW GUILTY PLEA AND/OR CORRECT ILLEGAL SENTENCE AND INCORPORATE MEMORANDUM

NOW INTO COURT, Through undersigned counsel, Davidson S. Ehle, III of

WILLIAMS BOSHEA & EHLE, L.L.C., COMES THE DEFENDANT, Christie Lynn Cheramie,

and moves this Honorable court as follows:

I.

On June 22, 1994, the defendant, Christie Lynn Cheramie, who was sixteen years old at

the time, entered a guilty plea to second degree murder, La R.S. 14:30.1, and was sentenced to

life imprisonment. (See exhibit "A" Boykin v. Zatron and sentencing).

II.

The defendant, Christie Lynn Cheramie, respectfully contends that her guilty plea of

second degree murder was not knowingly, voluntarily and intelligently entered because of the

District Court's failure to inform her of her right to a trial by a jury and to elicit a wavier of the

same from her prior to accepting a guilty plea from a sixteen year old with a seventh grade

education. Specifically, the District Court stated:

Since we have gone through two and a half days into a trial, already, I feel certain that

you understand that you have a right to a trial, but nevertheless, part of this is to ask you: Do you

understand that you have the right to continue your plea of not guilty and have a trial, do you

understand that?

Yes sir.

And, at that trial, you could not be found guilty unless the State would prove your guilt

beyond a reasonable doubt, do you understand that?

Yes sir.

And, at that trial, your lawyers would have the right to cross examine any witness who

would testify against you, do you understand that?

E

Yes sir.

And, at that trial, you would not be required to present evidence if you didn't want to, but you could present evidence if you wanted to, do you understand that?

Yes sir.

Do you understand that by pleading to the reduced charge of SECOND DEGREE MURDER, that you are giving up your right to a trial; you're giving up your right to confront and cross-examine the witness against you, and you are giving up the right not to incriminate yourself? Do you understand these things?

(See appendix A pages 8-9).

### III.

In State v. Galliano 396 So.2d 1288 (La. 1981) the Supreme Court, addressing the question of the defendant's motion to withdraw guilty plea stated:

> "Because a plea of guilty waives an accused's fundamental right to a jury trial, right to confront his accusers and privilege against self incrimination, due process requires as a prerequisite to its validity that the plea be a voluntary and intelligent relinquishment of known rights. McCarthy v United States, [ ]. The record of the plea must show that the defendant was informed of these three basic rights and then knowingly and voluntarily waived them. State v. LeFleur, 391 So.2d 445 (La. 1980)."

### IV.

In State v. Guzman 605 So.2d 512 (La.App.5th Cir. 1995) the court observed with regards to a Motion To Withdraw Guilty Plea filed after sentencing, that:

> Even after sentencing, if a trial court finds "either that a plea of guilty was not entered freely and voluntarily or that the Boykin colloquy was inadequate, and that the plea, therefore, is constitutionally infirm, the Trial Court retains the authority to vacate the sentence and set aside the plea, notwithstanding Article 559." State v. Lewis, 421 So.2d 224, 226 appeal after remand, 461 So.2d 1250 appeal after remand, 482 So.2d 659 deni, 487 So.2d 437

### V.

In State v. Arnold 706 So.2d 578 (La.App. 2nd Cir.1998), the Court of Appeal explained the right to a jury trial as:

> The Sixth and Fourteenth Amendments to the U.S. Constitution guarantee criminal defendants the right of trial by jury for "serious crimes." Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Similarly, Article 1, § 17 of the Louisiana Constitution stipulates that crimes for which the punishment may be confinement for more than six months must be tried by a jury except when, in non-capital cases, the defendant knowingly and

intelligently waives his right to a jury trial. See also La.C.Cr.P. arts. 780 and 782. The **waiver** of the right to trial by jury is never presumed from a silent record. State v. Clay, 623 So.2d 211, 217 (La.App. 2d Cir. 1993); State v. Burton, 540 So.2d 1023, 1025 (La.App. 2d Cir. 1989). Each of the crimes with the defendant was charged carried the right to a trial by jury.

The Supreme Court has refused to adopt an absolute rule that no jury **wavier** can be effective unless the record reflects that the accused was personally informed by the Judge of his right to a jury trial. State v. Phillips, 365 So.2d 1304 (La. 1978), cert. denied 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979). Nevertheless, in State v. Wilson, 437 So.2d 272 (La. 1983), the Supreme Court said that when a defendant waives such a valuable right, the trial judge should advise the defendant of his right to trial by jury and require the defendant to personally waive the right either in writing or by oral statement in open court on the record. A knowing and intelligent **waiver** of that right will not be presumed from a silent record.

## VI.

The defendant respectfully contends and the record demonstrates, with all due respect, that the District Court <u>never</u> informed her of her right to a trial by jury. An implicit jury trial waiver in light of the unique circumstances herein, was insufficient to satisfy the mandatory provisions of <u>Boykin v. Alabama</u>, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

Wherefore, the defendant Christie Lynn Cheramie prays that after an evidentiary hearing, her Motion To Withdraw Guilty Plea be GRANTED.

Respectfully submitted:

**WILLIAMS BOSHEA & EHLE, L.L.C.**

_(signature)_

**DAVIDSON S. EHLE, III (#22045)**
**JAMES A. WILLIAMS (#13504)**
**KEVIN V. BOSHEA (# 3286)**
**MICHELLE H. HESNI (#26655)**
407 Huey P. Long Avenue
Gretna, Louisiana 70053
Telephone: 504/361-0636
*Attorneys for* Christie Lynn Cheramie

intelligently waives his right to a jury trial. See also La.C.Cr.P. arts. 780 and 782. The waiver of the right to trial by jury is never presumed from a silent record. State v. Clay, 623 So.2d 211, 217 (La.App. 2d Cir. 1993); State v. Burton, 540 So.2d 1023, 1025 (La.App. 2d Cir. 1989). Each of the crimes with the defendant was charged carried the right to a trial by jury.

The Supreme Court has refused to adopt an absolute rule that no jury wavier can be effective unless the record reflects that the accused was personally informed by the Judge of his right to a jury trial. State v. Phillips, 365 So.2d 1304 (La. 1978), cert. denied 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979). Nevertheless, in State v. Wilson, 437 So.2d 272 (La. 1983), the Supreme Court said that when a defendant waives such a valuable right, the trial judge should advise the defendant of his right to trial by jury and require the defendant to personally waive the right either in writing or by oral statement in open court on the record. A knowing and intelligent waiver of that right will not be presumed from a silent record.

VI.

The defendant respectfully contends and the record demonstrates, with all due respect, that the District Court never informed her of her right to a trial by jury. An implicit jury trial waiver in light of the unique circumstances herein, was insufficient to satisfy the mandatory provisions of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

Wherefore, the defendant Christie Lynn Cheramie prays that after an evidentiary hearing, her Motion To Withdraw Guilty Plea be GRANTED.

Respectfully submitted:

WILLIAMS BOSHEA & EHLE, L.L.C.

DAVIDSON S. EHLE, III (#22045)
JAMES A. WILLIAMS (#13504)
KEVIN V. BOSHEA (# 3286)
MICHELLE H. HESNI (#26655)
407 Huey P. Long Avenue
Gretna, Louisiana 70053
Telephone: 504/361-0636
*Attorneys for* Christie Lynn Cheramie

## 12TH JUDICIAL DISTRICT COURT PARISH OF AVOYELLES

### STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

CHRISTIE LYNN CHERAMIE

FILED: _June 4, 2001_

CRIMINAL DOCKET :

# 79,678 B

_[signature]_

**DEPUTY CLERK**

### SHOW CAUSE ORDER

IT IS ORDERED that Christie Lynn Cheramie show cause on the _12th_ day of

_July_, 2001 at _9:30_ o'clock _a_.m. why the foregoing Motion to Withdraw a

Guilty Plea should not be granted.

_Marksville_, LOUISIANA, this _4th_ day of _June_, 2001.

_[signature]_

**JUDGE**

This certifies that the foregoing
is a true copy of the original signed
and filed this 5th day of June,
2001.  _Angie Kay_
Dy. Clerk 12th Judicial District Court

TWELFTH JUDICIAL DISTRICT COURT

PARISH OF AVOYELLES

STATE OF LOUISIANA

| | | |
|---|---|---|
| STATE OF LOUISIANA | : | CRIMINAL DOCKET #79,678-B |
| V. | : | HON. TED R. BROYLES |
| CHRISTIE LYNN CHERAMIE | : | JUDGE PRESIDING |

---oOo---

## MOTION TO WITHDRAW GUILTY PLEA AND/OR CORRECT ILLEGAL SENTENCE

Mr. David Lafargue
ASSISTANT DISTRICT ATTORNEY
P.O. Box 427
Marksville, LA 71351..........Representing STATE OF LOUISIANA

Mr. Davidson S. Ehle, III
ATTORNEY AT LAW
407 Huey P. Long Avenue
Gretna, Louisiana 70053........Representing CHRISTIE LYNN CHERAMIE

-------------------------------------------------------------------

| | | |
|---|---|---|
| RECORDED BY: | : | TRANSCRIBED BY: |
| Mrs. Debra D. Laiche | : | Mrs. Helen D. Ducey |
| COURT REPORTER & DEPUTY CLERK | : | COURT REPORTER & DEPUTY CLERK |
| 12TH Judicial District Court | : | 12TH Judicial District Court |
| P.O. Box 219 | : | P.O. Box 219 |
| Marksville, LA 71351 | : | Marksville, LA 71351 |

MOTION TO WITHDRAW GUILTY PLEA AND/OR
                    CORRECT ILLEGAL SENTENCE.........August 1, 2001

F

I N D E X


CRIMINAL DOCKET #79,678 – SECOND DEGREE MURDER


**CHRISTIE CHERAMIE**

      DIRECT EXAM/MR. EHLE...........................13
      CROSS EXAM/MR. LAFARGUE........................13
      RE-DIRECT EXAM/MR. EHLE........................18

**WILLIAM J. BENNETT**

      DIRECT EXAM/MR. LAFARGUE.......................20
      CROSS EXAM/MR. EHLE............................25

COURT'S RULING........................................27

CRIMINAL DOCKET #79,678

BY THE COURT:

This is a post-conviction release matter or application to withdraw plea in the **State of Louisiana against Christie Lynn Cheramie** and that docket number is, what is that 79 thousand 678?

BY MADAME CLERK:

Yes, sir.

BY THE COURT:

For the petitioner is Mr. Ehle?

BY MR. EHLE:

Yes, sir.

BY THE COURT:

And for the State is Mr. Lafargue?

BY MR. LAFARGUE:

That's correct, your Honor and Ms. Cheramie is present in court, your Honor.

BY THE COURT:

Fine.  They were able to...

BY MR. EHLE:

Yes, sir.

BY THE COURT:

...serve the warden in time this time. Almost not though because you didn't mail it directly to me, but we managed to do it though.

BY MR. EHLE:

Oh, well, I mailed it to you and the clerk.

BY THE COURT:

3

A copy.  I got your copy a little later
on.  That's alright, no damage done.

BY MR. EHLE:

Okay.  All right.  Thank you, sir.

BY THE COURT:

I'm familiar with  the  issues  of
leave...would you wish to address the Court to
any extent?

BY MR. EHLE:

Yes, sir, I do.

Your Honor, on behalf of Ms. Cheramie, we
filed a motion to withdraw her guilty plea
based on the plea was infirm because the trial
court did not inform Mrs. Cheramie that she
had a right to a jury trial.  The Court did
inform her that she had a right to a trial,
however, he did not say the word "jury" and I
think from the case law that we have outlined
in our motion, if the trial court does not
inform personally the defendant with three
basic rights, then the plea is infirm and
unconstitutional and in this court retains the
jurisdiction to allow a defendant even after
sentencing to withdraw her plea.

BY THE COURT:

Well, Mr. Ehle, my recollection is that
this  was  done  during  the  trial,  is  that
correct?  A jury had been selected or...

BY MR. EHLE:

Well, I think they were in the second day
of jury selection.

BY THE COURT:

Uh-huh.

4

BY MR. EHLE:

However, your Honor, this was a death penalty case and they were in the process of selecting death qualified jurors and from being involved in picking several death penalty jurors I can tell you that I know several lawyers who don't understand the process of picking a death penalty jury, much less, a sixteen year old girl with a seventh grade education at the time. Our contention is the cold hard facts of the record stand here and there's no getting around the Judge did not inform Ms. Cheramie of her right to a jury trial even though they were in the mist of picking a jury for two days. It's our contention that just really doesn't matter. The law is very clear that the trial judge must inform the defendant of those three basic rights personally in order for the guilty plea to withstand the scrutiny. And the trial court simply did not do that and so it's our position that because he didn't do that the plea is infirm.

BY THE COURT:

Why was this not raised at the prior application, counsel or can you answer that?

BY MR. EHLE:

Your Honor, I was not Mrs. Cheramie's counsel for this.

BY THE COURT:

I understand that.

BY MR. EHLE:

I have no idea. To me that is the first

5

thing that leaps from the page when you read
the chronically between the trial judge and
the defendant. It just jumps out at you and I
can't understand why this hasn't been raised
before. Not to besmirch prior counsel, but I
don't know, your Honor, I really don't know.

BY THE COURT:

All right. I may have another question or
two later on. Let me add another question to
that....

BY MR. EHLE:

Absolutely.

BY THE COURT:

Mr. Lafargue, what's the position of the
State?

BY MR. LAFARGUE:

Yes, your Honor, initially, your Honor,
the State would also like to ask, you know,
we contend that this matter is prescribed
through post-conviction relief. It's beyond
the three years from the date that the
Judgment became final. We just want to put
that for the record in the event we need that
on appeal or review up ahead. Your Honor, I
disagree...

BY THE COURT:

It isn't necessary to plead that in
writing I assume.

BY MR. LAFARGUE:

I don't think so, your Honor.

BY THE COURT:

All right.

BY MR. LAFARGUE:

6

I mean the record clearly reflects that it's beyond the three year period of time so I just wanted to get that in the record, but I mean we're here on a hearing and I know your court...your Honor's going to consider it anyway, but, you know, the merits of it, but I would like to offer and introduce into the record a certified copy of the boykinazation sentence if it hasn't been already.  I don't believe it's been introduced.

BY MR. EHLE:

Well, it's part of my motion, so.

BY MR. LAFARGUE:

I'd also like, your Honor, and I'll mark that S-1 for identification.

BY THE COURT:

All right.

BY MR. LAFARGUE:

And I could give you that, your Honor. I'd also like to offer and introduce, your Honor, just...

BY THE COURT:

Excuse me.

BY MR. LAFARGUE:

...certified copy of the minutes of these proceedings, in other words...

BY THE COURT:

All right.

BY MR. LAFARGUE:

...from start to finish so that the record would also reflect, you know, what occurred back in '94 when this case was being prosecuted.

7

BY THE COURT:

     Was there any...was there any advice to the defendant at that time relative to her rights?

BY MR. LAFARGUE:

     Your Honor, I don't necessarily think so, but...

BY THE COURT:

     Okay.

BY MR. LAFARGUE:

     ...it would give the dates that the jury began or the parties began picking the jury and your Honor, I think it was about two and half days that we actually picked the jury. I think the boykinization that I just introduced before you ...to you, your Honor, the boykinization also reflects that the Judge... when Ms. Cheramie decided to pled guilty, the Judge noted on the record that since Monday we had been picking a jury. That eight jurors had actually been picked. These were death qualified jurors, your Honor. Might also add that, your Honor, in that vein, that, you know, when you're talking about counsel says in the boykinization it doesn't say "jury trial". You know, in this particular trial, that's the only kind of trial that the defendant was entitled to. We were seeking a death penalty. And it was a capital case and you can't have no other trial other than a jury trial. She wasn't entitled to waive the jury. So, in that light your Honor, you have her two attorneys going through the trial, and

8

BY THE COURT:

 Was there any...was there any advice to the defendant at that time relative to her rights?

BY MR. LAFARGUE:

 Your Honor, I don't necessarily think so, but...

BY THE COURT:

 Okay.

BY MR. LAFARGUE:

 ...it would give the dates that the jury began or the parties began picking the jury and your Honor, I think it was about two and half days that we actually picked the jury. I think the boykinization that I just introduced before you ...to you, your Honor, the boykinization also reflects that the Judge... when Ms. Cheramie decided to pled guilty, the Judge noted on the record that since Monday we had been picking a jury. That eight jurors had actually been picked. These were death qualified jurors, your Honor. Might also add that, your Honor, in that vein, that, you know, when you're talking about counsel says in the boykinization it doesn't say "jury trial". You know, in this particular trial, that's the only kind of trial that the defendant was entitled to. We were seeking a death penalty. And it was a capital case and you can't have no other trial other than a jury trial. She wasn't entitled to waive the jury. So, in that light your Honor, you have her two attorneys going through the trial, and

this is shown on the boykin record, for two and a half days picking a death qualified jury at which time when they change their mind and decide that we going to pled guilty, I mean, in fact, on page four it says: The record should just by the way of having it complete should reflect that since Monday morning at the beginning at this point there's been eight jurors who has been selected and sworn.

Later on down the line, your Honor, the Judge does specifically note that to Ms. Cheramie, that, you know, we've been going through this trial, so I'm sure you know that you have a right to it. I mean, that is shown on the record, in fact, I think it is even quoted by counsel since we've gone through two and a half days of trial already I feel certain that you understand you have a right to trial. I mean, there's no other trial other than what we're talking about is the actual jury trial that we've been in for two and a half days. You know, that's being super hyper technical to suggest that the court's failure to state that "jury trial", you know, in the context of this trial, your Honor, that was the only trial we were talking about was "jury trial". I mean, we'd been in it. And that's why the Judge didn't start off with his normal sayings because I mean, we've been through this trial and he says: Young lady, you know, I know you know what we're talking about here. And we're talking about the trial we had been in and that you are waiving that

9

right.  And I just...this is nowhere close to the cases cited by counsel where you review and boykin wasn't given and the record doesn't reflect an understanding of what's going on. In this instance I think it's overwhelmingly clear that the defendant in this instance knew and just to suggest that, hey, it didn't say "jury trial", when, in fact, trial meant jury trial under the terms that we were dealing with at the time.  It's hyper technical. I don't know of a case one way or another, your Honor, I don't think...I haven't found anything where this has come up specifically this question, so I would suggest to the Court that it's fairly new territory in that regard, but that the record reflects clearly that...that Ms. Cheramie understood everything she was talking about.

I do have Judge Bennett subpoened to testify, your Honor.  He was actually one of Ms. Cheramie's attorneys in this case.  I'm not sure whether his testimony is necessary, that's why I was asking counsel about how broad the scope of the pleadings are.  You know, if there's some other misunderstanding, you know, the Judge or...at the time Attorney Bennett in these pleadings also acknowledged to the Court in the boykin that we had gone...that they had talked for hours with Mrs. Cheramie and that she understood...

BY THE COURT:

It appears of record, doesn't it?

BY MR. LAFARGUE:

Right, it appears of record that she understood what was going on and that he...both he and Renee Roy, her other attorney said she fully understood what was going on. Now, you know, if she misunderstood what the plea bargain was, or some other things that aren't of record, I have Judge Bennett to testify about that. But I believe counsel indicated to me before the hearing that it's solely...that we're talking solely about the Judge not saying "jury trial", is that correct?

BY MR. EHLE:

Well, that's correct, your Honor, however, Ms. Cheramie's available to testify and I'd like to put her on the stand to ask her just one question. And I think that would clear whether or not...see nobody can say what Ms. Cheramie understood except Ms. Cheramie. So I would like to put her on the stand and ask her one simple question.

BY THE COURT:

Your one question would be: Did you know that you were entitled to a trial by jury?

BY MR. EHLE:

Yes, sir, that would be the question.

BY THE COURT:

And that's it?

BY MR. EHLE:

And...

BY THE COURT:

I don't anticipate a negative answer there counsel, do you?

11

BY MR. EHLE:

      That's correct, your Honor.  And, you know, it's clear to the court that that testimony would be self-serving, however, it may be necessary for the record and...unless you'd want to stipulate that that's what she would say.

BY MR. LAFARGUE:

      Well, you know, I'd want to cross examine her and bring up Judge Bennett to let her... to testify that she obviously knew that she was in a jury trial.

BY THE COURT:

      You conduct it the way you think that you should counsel...

BY MR. EHLE:

      Well, I'd like to call Mrs. Cheramie...

BY THE COURT:

      But I don't want her to get into more trouble than she's in now.

BY MR. EHLE:

      I'd like to call her to the stand, your Honor.

BY THE COURT:

      All right.

BY MR. EHLE:

      I think one thing it would be necessary.

BY THE COURT:

      Would you like to remove the cuffs?

      Be seated there.  Watch your step.

BY MR. EHLE:

      Christie, would you state your name and date of birth, please.

BY THE WITNESS:

Christie Cheramie, 1/27/78.

## DIRECT EXAMINATION

BY MR. EHLE:

Now, Christie, you've been present during this oral argument and you understand why you're here, correct?

A.      Yes, sir.

Q.      All right.  Now, if...did you understand, Christie, that you had a right to a jury trial?

A.      No, sir.

Q.      Did the Judge tell you you had a right to a jury trial?

A.      No, sir.

Q.      If the Judge would of told you you had a right to a jury trial, would you have done something differently?

A.      Yes, sir.

BY MR. EHLE:

Thank you.

I tender the witness, your Honor.

BY THE COURT:

Mr. Lafargue.

## CROSS EXAMINATION

BY MR. LAFARGUE:

Ms. Cheramie, you indicated that if he would have told you that you would of done something differently.  What would you have done differently?

A.      I would have...the Judge would have gave me my rights and told me my rights to a jury trial and would have made me fully aware to what was going on because I did not understand.  I would have took it to trial if I would have known the difference.

Q.      So your saying that if the Judge would have told you you

13

had a right to a jury trial you would have preferred to have that jury trial?

A.    Wouldn't of pled guilty.

Q.    So you would have had a jury trial?

A.    Yes, sir, I would have went to trial.

Q.    Isn't that exactly what you were doing for the two and a half days before pleading guilty?

A.    I didn't understand what was going on.

Q.    You didn't understand that you were in a trial?

A.    I knew I was going to court for a murder charge.

Q.    That's not my question.   You didn't understand...that trial...

A.    (UNINTELLIGIBLE).

> BY THE COURT:
>
> Let him finish his question before you begin  your    answer    otherwise,    there's confusion.

Q.    Let me ask you again.   You did not understand that you were in trial for two and a half days before you pled guilty?

A.    No, sir.  I knew I was going to court on a murder charge. I knew that I was being tried on a murder charge, but I was never fully aware of my complete rights to anything that was going on.   Did not understand, have nobody explain it to me.

Q.    Those people that we were picking for a jury; you knew that jurors were being picked for your trial?

A.    I didn't understand what was going on.

Q.    That's not my question.   Did you know that jurors were being picked for your trial?

A.    The only answer that I can give is I did not understand. I didn't know what was going on.

> BY THE COURT:
>
> Listen to his question.  Did you know that the jurors were being selected to try you on

14

that case, that's his question.

A.       I knew there were people being on the stand being questioned.

Q.       About your case?

A.       Seeking the death penalty.

Q.       And about your case as to whether they were going to serve on the jury?

A.       I don't understand everything that was happening.  I didn't.  I really, really, didn't.

Q.       Still don't understand today?

A.       I know a lot more today than what I did back then.

Q.       So you're saying that your two attorneys, Mr. Bennett and Mrs. Roy, did not explain to you that you were in a trial?

A.       Did not explain...they didn't give me my...they didn't tell me anything about no rights to a jury trial or what was going on.  All I know is that I was facing the death penalty for something that I did not do.

Q.       Okay, ma'am.  That's not the question I asked you.  Your two attorneys did not tell you that you were in your trial?  You were in a trial when you sat down ya'll started to pick the jury?

A.       No.

Q.       And your two attorneys didn't explain to you the process of the jury trial what was being done?  You have to answer, ma'am.

A.       No, sir.

Q.       And when you decided to plead guilty they didn't explain to you that the trial would stop and that you could plead guilty to the lessor offense of murder or of second degree murder?

         BY MR. EHLE:

              Judge, I would object to that question.

         The issue here is whether or not the Judge

15

informed Mrs. Cheramie of her right to a jury

trial, not what her attorneys...

BY THE COURT:

Well, she's testified that she didn't know

that she had the right to a trial by jury and

that's proper cross examination counsel,

overruled.

BY MR. EHLE:

Just note my objection, thank you.

Q.      So your two attorneys didn't even tell you that the trial

would stop? You didn't understand...they explain to you that

the trial would stop and that you could plead guilty to a

lessor offense?

A.      I didn't explain....I didn't understand anything that was

going on.  I was looking for them...to them for guidance to

let me know what was going on.

Q.      Before you pled guilty, when you stopped picking the

jury, the jury...we took a recess, and the attorneys sat down

and spoke with you for over an hour, didn't they?

A.      This is what was told to me by the DA and the two

attorneys that I had.  If I did not plead guilty they would

definitely seek the death penalty and lock up three of my

family members for accessary after the fact.

Q.      And lock up three of your family members, what?

A.      For accessary after the fact.

Q.      So the fact that they were going to lock up three of your

family members for accessory after the fact, you're saying

that that caused you to want to plead guilty?

A.      I was scared.  I didn't know...I didn't understand what

was going on.

Q.      You're saying that the DA's office and your attorneys

were pressuring you to plead guilty or else your three family

members would also be put in jail?

16

A.      Yeah, I feel I was pressured.

Q.      Okay.  And that was...

A.      And I was threatened.

Q.      And that was by your attorneys, also?

A.      Yes, sir.

Q.      How else did the attorneys threatened you?

A.      They just kept stressing the death penalty and my three family members which was my mother, my step-father, and my aunt and I was scared and I just felt that, you know, I know my innocence, you know.  I believe in my own innocence if nobody else does.  And I feel that, you know, if I would have been told the proper proceedings of everything, it could have been different.

Q.      So you're saying that your...

A.      I wouldn't of pled guilty because, you know, I'm not guilty...

Q.      You did not...

A.      ...and that makes a difference.

Q.      ...you're saying that your attorneys did not explain to you the proceedings?

A.      Not at all.  I looked to them for guidance and that's just what kind of guidance that I got.

Q.      And you didn't get any...the guidance you got was pressuring you to plead guilty?

A.      To pled guilty.

Q.      And that's what...

A.      I thought they were supposed to be on my...

BY THE COURT:

        I realize she's on cross, but we are getting into other areas now and (UNINTELLIGIBLE).

BY MR. LAFARGUE:

        Well, it goes towards her credibility,

17

your Honor.  She comes up here...

BY THE COURT:

I understand that.

BY MR. LAFARGUE:

She comes up here and indicates to us that she didn't...if she would of known, she would of gone to trial instead of waiving her right to trial by jury.  Now, obviously the State's going to contend that that testimony in and of itself has no credibility whatsoever.

BY THE COURT:

But you're getting into ineffective system, I mean, ineffective assistance of counsel and I think perhaps she may have alleged that in a prior application, I don't know.  But I forget what...I've ruled on her case a couple of times.  I think perhaps one of them was.  I may have included that, so I don't want to rehash it is what I'm saying, that's the only thing about it, counsel.

BY MR. LAFARGUE:

I have no further questions, your Honor.

BY MR. EHLE:

Very brief re-direct, your Honor.

**RE-DIRECT EXAMINATION**

BY MR. EHLE:

Ms. Cheramie, that hour or so of discussion with your lawyers, were those discussions primarily about whether or not you should face the death penalty, or take a life sentence, or were your lawyers going through the entracacies of the trial proceedings?

BY MR. LAFARGUE:

18

I'm going to object to the leading nature
of that question, your Honor.  I mean, if she
wants to testify what happened during that
hour, let her do so, not her counsel on her
behalf.

BY THE COURT:

You need to rephrase it.  You just can't
give her options like that.

BY MR. EHLE:

Yes, sir.

Q.        Christie, did anybody at any time tell you Christie you
have a right to a jury trial?

A.        No, sir.

BY MR. EHLE:

Thank you.  No further questions.

BY THE COURT:

All right.  You may step down.  Anything
else, Mr. Ehle?

BY MR. EHLE:

No, sir.

BY THE COURT:

Mr. Lafargue, do you...

BY MR. LAFARGUE:

Call Judge Bennett, your Honor.

BY THE COURT:

All right.

Be sworn, please sir.

BY MADAME CLERK:

Do you solemnly swear to tell the truth,
the whole truth, and nothing but the truth, so
help you God?

BY THE WITNESS:

I do.

19

Good morning everybody. Judge, again I apologize for not having a tie, but I was not subpoenaed.

BY THE COURT:

(UNINTELLIGIBLE).

BY MR. LAFARGUE:

Judge, will you state your name and address for the record, please.

BY THE WITNESS:

William J. Bennett, 518 South Washington Street, Marksville, Louisiana.

**WILLIAM J. BENNETT**, who, after first being duly sworn, testified under oath, under **direct examination** by **Mr. David Lafargue**, which testimony is as follows, to-wit:

**BY MR. LAFARGUE:**

In Criminal Docket 79,678-B, **State of Louisiana versus Christie Lynn Cheramie**, charged with first degree murder back regarding February 4, 1994 offense, were you in anyway connected with that case?

A.    I was appointed to represent Mrs. Cheramie with Renee Roy. I think Ms. Roy was retained by the Indigent Defender Board. At the time I was not. This was a special appointment.

Q.    And you were the lead counsel in that case?

A.    Yes.

Q.    Now, Judge, if you could relate to the Court basically your recollection of what occurred when the trial...after the trial started?

A.    I remember we began jury selection and if I'm not mistaken went about three days. It was on the Wednesday when Ms. Cheramie entered a plea to the reduced charge of second

20

degree murder.

Q.          Prior to entering the plea, did the Court recess and you and Ms. Roy, as well as, members of Ms. Cheramie's family discuss her pleading guilty?

A.          Yes.

Q.          Okay. During those discussions, did you at any time, or at any time during your representation of Ms. Cheramie, did either you or Ms. Roy threaten or indicate that three of her family members, namely, her mother, her step-father and her aunt could be put in jail for accessory after the fact if she didn't plead guilty?

A.          I don't recall that at all. Now, that you say it I remember having a discussion with Eddie Knoll about that at some point, but I don't remember talking to Christie or her mama or said that about that. I'm not saying that did not happen. I did not threaten anyone with going to jail, but I do now for the first, I mean, I didn't remember that 'til you said it, but I remember Eddie Knoll mentioning that at some point.

Q.          Well, Ms. Cheramie has testified that basically you...

          BY MR. EHLE:

                    Objection, your Honor I don't think that he can comment on, you know, he can ask him questions, but I don't think...

          BY THE COURT:

                    Counsel, I'm old fashion, rise to make your objection.

          BY MR. EHLE:

                    Oh, I'm sorry, your Honor, I apologize.

                    Objection, I don't think he can tell the witness what another witness has said and then ask him a question about it. He can ask him a question and leave it up to your Honor to

21

decide if it's contradictory or not.

BY THE COURT:

(UNINTELLIGIBLE).  Rephrase the question assuming that she said such and such.

BY MR. EHLE:

Thank you.

Q.    All right.  If Ms. Cheramie testified that both you and Ms. Roy threatened...that she was threatened by y'all to...into pleading guilty because at one of the factors being that her mother, step-father, and aunt would be put in jail if not for accessory after the fact whether that would be a correct statement?

A.    I never threatened anyone to get them to plead guilty. I was, you know, in the trial.  I am not going to say that we did not discuss that though because now that you brought it up it does jar something in my memory.  There were discussions...I don't remember about the step-father particularly, but about the mom particularly I remember discussions with Eddie Knoll that there was going to be some potential charges against her as an accessory after the fact.

Q.    I understand that, Judge, but that's not really pertinent to the proceedings.  What I'm getting at is did you at any time import or threat to Ms. Cheramie to get her...did you use that as a factor to get Ms. Cheramie to plead guilty?

A.    No, sir, but I...and I'm sure now that we did talk to Christie and her mama about my discussion with Eddie Knoll because I like to tell the client and their family everything that was going on.

Q.    Now, Ms. Cheramie indicated that she did not understand she had a right to a trial by jury.  Did y'all explain the process of a jury trial to her?

A.    Yes, and we were in the third day of jury selection if I remember.

22

Q.     And before the actual...first day of jury selection, did
y'all indeed explain to her the process of the trial?

A.     Yes.

Q.     Do you feel that she understand your explanations what a
jury trial was about?

A.     I believe Christie understood what was going on the best
any sixteen year old girl could because we explained over and
over.   That's not to say she had the same understanding then
she would have today at whatever age she is now, but she was
sixteen, she was scared.   I can remember specifically points
in jury selection where she was shaking depending on the
response of a respective juror.   Did she understand what I
told her and what Renee Roy told her to the best of my
recollection yes, she did understand what we were telling her
at least she verbalized she did understand.   How far that
understanding went for a sixteen year old girl after having
now raised sixteen year old girls, I don't know how far that
went, okay.   But to me in my mind, yes, she knew what was
going on.

Q.     In fact you imported that to the Court during the
boykinization, did you not, that you felt she understood after
discussing with it...the whole situation with her extensively?

A.     Yes.   And Judge, I can tell you, and counsel, I did read
the boykinization this morning for the first time ever, okay,
just to try to refresh my memory as to that.

Q.     And that did, in fact, help refresh your memory as to
your
belief as to her understanding of the nature of the
proceedings against her?

A.     Yes, in fact, and when I was told I might be a witness in
thinking about it and because I knew the issue would be how
much did Christie actually understand and I did not recall
making the specific statements that I did make to the Court

23

because I stand right now what I just said how much she understood. She understood to me the best a sixteen year old could understand under the circumstances. She did have and her mama especially had a hard time understanding the concept of principle during the whole representation of Christie. At that time I think they understood because we discussed a lot of factors during the jury selection process on the potentials and whether we were going to win or lose and some of the factors had to do with evidence, some had to do with the legalities, and some had to do with other things which I remember discussing with her.

Q.    And, of course, this was a capital case so it had to be by jury trial, correct?

A.    Absolutely.

Q.    Okay, and she understood that?

A.    As I recall, she did, yes.

Q.    So obviously when she was waiving the trial she was waiving a trial by jury, correct?

A.    Yes.

Q.    And you think she understood that?

A.    Yeah, at the time reading the boykin I remember now that we did take a break and talk to Christie and the family for a long time. As Judge now, I don't know if I would have allowed such a lengthy break. It was reading the transcript close to an hour of a break and there was an understanding that there would be no further jury so everything was over, okay, because we talked about...I mean, I remember, you know, the life sentence. I remember going to Eddie Knoll on several occasions trying to get him to reduce it to manslaughter twenty-one, which was the maximum at the time. I remember talking to the family about that, trying that all I could and he would not budge. Under, you know, this was the best deal that we had available under the circumstances.

24

Q.    And you knew this (UNINTELLIGIBLE) defendant at the time was sixteen years old.  She was young and didn't understand everything, correct?

A.    Yes.

Q.    And I take it based upon that you would of made it your point to make sure that she understood to the best of your ability, you explained to her everything that was going on?

A.    Because of her age there was attempt to communicate also to her mother and her step-father.  Renee Roy, as I remember, was more so involved with the intricate conversations with Christie one on one.  Although, I did talk to her a lot, got to know Christie, got to like Christie.  We talked to her mother several times, her step-father several times.  Felt, you know, I felt, based on all of the circumstances that I knew, that it should of been a manslaughter twenty-one, but couldn't get Eddie Knoll to budge and that's where we stood.

Q.    She understood she had a right to a jury trial?

A.    Yes, sir.

                BY MR. LAFARGUE:

                    Thank you.  No further questions.

### CROSS EXAMINATION

**BY MR. EHLE:**

      Good morning, Judge Bennett.

A.    Good morning.

Q.    Davidson Ehle on behalf of Christie Cheramie.

A.    Yes, sir.

Q.    You were present during the boykinization} correct, sir?

A.    Yes, sir.

Q.    At anytime did the Judge ever tell Christie she had a right to a jury trial?

A.    The transcript would reflect it.  And reading it this morning, you know, I did not pay particular attention to each

25

one of those rights because I didn't know that was one of the issues.

Q.      Okay.

A.      So the transcript would...I don't recall.

Q.      I'm sorry I didn't mean to interrupt you, but...

A.      Transcript would speak for itself.

BY MR. EHLE:

Thank you very much.  I don't have any other questions.

BY THE COURT:

The Judge took the words out of my mouth. There's the best evidence of what happened right there.

BY MR. EHLE:

Yes, sir, okay.

BY THE WITNESS:

That's it?

BY THE COURT:

Thank you, Judge.  Sorry to take you away from your work.

BY THE WITNESS:

Well, it wasn't...thank you.

BY THE COURT:

All right.

Mr. Lafargue, anything else?

BY MR. LAFARGUE:

Nothing else, your Honor.

BY THE COURT:

Do you wish to be heard briefly or you want a rule?

BY MR. EHLE:

I think we can submit it.  I think we could submit it at this point, your Honor.

BY THE COURT:

   All right, sir.

   I first want to observe as  I have previously to you counsel perhaps that the petitioner,   Ms.  Cheramie  previously...no that's alright.  You may remain unless you wish to say something.

  BY MR. EHLE:

   No, no, sir, I just...(UNINTELLIGIBLE).

### COURT'S RULING

BY THE COURT:

  ...previously filed post conviction relief applications and in those applications there was no effort to seek to withdraw her plea, nor did she allege anything to the effect that her plea had not been given freely and voluntarily, that sort of thing.  On the failure of the Judge to state that she had a right to a trial by jury of her peers and the application may have been...might of been denied out of hand or on the record for that failure.  It being a repetitious application and no reference to that particular grounds in any prior applications and no explanation as to why, but I didn't do that.  I did not do that because I wanted to give her perhaps the benefit of the doubt.  Maybe there was some reason why she did not urge this previously.  And I think that it might be denied on the basis of prescription as mentioned by Mr. Lafargue earlier, but I'm going to pretermit ruling on those, however.

  I've reviewed the transcript.  In fact, I reviewed it when this was first presented to me and when I was first appointed on the case and having reviewed the record and your arguments I conclude that irrespective of the dilatory nature of the application that the application must be denied. The presiding judge in my opinion sufficiently informed the

27

accused of her right to a trial by jury.  Surely, it might
have been articulated with more...in more detail, with more
precision perhaps.  I think it was a Judge Cordosa (S/P) who
said: There is a detail that defeats itself.  The longer I
work in this profession the more I'm inclined to believe that
sometimes we...in an effort to do these things by route.  The
advice as to your rights prior to taking a plea failed
sometime to ascertain what the defendant may be thinking or
may know.  You have judges so frequently have a list that they
go down and one by one so forth and do it rather quickly.  We
have to consider this in the light of the circumstances and
the main circumstance is that you were in the middle of a
trial.  Jurors were being selected and jurors had been
selected and with your due difference I don't accept the
testimony of this young lady that she really didn't know that
she had a right to a jury trial, frankly.  She had to be
oblivious to everything that was going on in order to say
that.  Now, she was represented by two able attorneys and it's
on the record that they did advise her.  Maybe not
specifically that: You have a right to a jury trial.  But I
conclude from all of this that they did so advise her.  The
old saying is that the totality of the circumstances coupled
with what the Judge did say in that plea colloquy leads me to
the inevitable conclusion that Ms. Cheramie did know of her
constitutional right to a trial by jury of her peers.  It was
the only mode of trial if there had been a continuation or if
she had been...say if there had been a recess to go on to
another day (UNINTELLIGIBLE) I don't think that she knew it
and so let the application be denied.

             BY MR. EHLE:

                        Respectfully, note our objection your
             Honor.

             BY THE COURT:

                              28

Yes, of course.

BY MR. EHLE:

And we would request to take writs.

BY THE COURT:

All right.

BY MR. EHLE:

We'd like to order the transcript and...

BY THE COURT:

Do you want me to set a...

BY MR. EHLE:

Well, I'd rather wait until I get the transcript, that way...and then I'll file my notice of writ. I think I have...I don't know what the local rule is. I think it's something like thirty days, but I'll go ahead and order the transcript now and...I mean, how long do you think that will take?

BY MADAME CLERK:

You need to talk to Mrs. Ducey the Court Reporter.

BY MR. EHLE:

Okay.

BY MADAME CLERK:

When you step out her office is right there.

BY MR. EHLE:

Okay. Thank you, ma'am.

BY THE COURT:

He needs to see Mrs. Ducey?

BY MADAME CLERK:

Yes, sir.

BY THE COURT:

Gentlemen, it was a pleasure.

**THE END**

STATE OF LOUISIANA

PARISH OF AVOYELLES

I, HELEN D. DUCEY, Court Reporter and Deputy Clerk, Twelfth Judicial District Court, Marksville, Avoyelles Parish, Louisiana, do hereby certify as follows, to-wit:

THAT the above and foregoing was recorded by:

MRS. DEBRA LAICHE,

Court Reporter and Deputy Clerk, by Sony Recording System, before the:

HONORABLE TED R. BROYLES

Judge presiding, 12th Judicial District Court, Marksville, Avoyelles Parish, Louisiana.

THAT same was transcribed by me, to the best of my knowledge, ability and understanding.

THAT I am not an attorney, not related to any of the parties, and not interested in the outcome of the case.

THAT the attorneys, as per cover sheet attached hereto made part hereof, were present throughout the entire proceeding.

MARKSVILLE, AVOYELLES PARISH, LOUISIANA, this 7th day of the month of August, 2001.

HELEN D. DUCEY
COURT REPORTER & DEPUTY CLERK

> OFFICIAL SEAL
> HELEN D. DUCEY
> Certified Court Reporter
> in and for the State of Louisiana
> Certificate Number 91280
> Certificate expires 12-31-01

# The Supreme Court of the State of Louisiana

STATE EX REL CHRISTI LYNN CHERAMIE

VS.                                                    NO.   2000-KH-2071

STATE OF LOUISIANA

- - - - -

IN RE:  Cheramie, Christi Lynn; - Plaintiff; Applying for
Supervisory and/or Remedial Writs, Parish of Avoyelles,  12th
Judicial District Court Div. A, Nos. 97-4206A; to the Court of
Appeal, Third Circuit, No. KH 99 01687

- - - - -

March 23, 2001

Denied.  See, e.g., State v. Deloche, 96-1901, p. 1 (La.
11/22/96), 684 So.2d 349; see also Coe v. Bell, 161 F.3d 320,
352-55 (6th Cir. 1998).

                      BJJ

                      PFC

                      CDK

                      JPV

                      CDT

KNOLL, J.,   recused.

Supreme Court of Louisiana
March 23, 2001

*Rai S. Dayle*
Deputy   Clerk of Court
         For the Court

COURT MINUTES

\* \* \* \* \*          \* \* \* \* \*          \* \* \* \* \*          \* \* \* \* \*

\* \* \* \*

COURT OPENED AGREEABLY TO ADJOURNMENT THIS 1ST DAY OF THE MONTH OF AUGUST, A.D., 2001, THE HONORABLE TED R. BROYLES, JUDGE AD HOC, PRESIDING:
COURT REPORTER PRESENT: DEBRA D. LAICHE
BAILIFF PRESENT: JANICE A. GAUTHIER


STATE OF LOUISIANA
VS.
CHRISTIE LYNN CHERAMIE
Case #: 94-CR -079678          Charge: FIRST DEGREE MURDER
                                        (REDUCED TO "SECOND DEGREE MURDER")
HEARING ON MOTION TO WITHDRAW GUILTY PLEA AND/OR CORRECT ILLEGAL SENTENCE
AND INCORPORATE MEMORANDUM THIS DAY TAKEN UP PURSUANT TO REGULAR ASSIGN-
MENT. THE DEFENDANT WAS PRESENT IN COURT ACCOMPANIED BY HER RETAINED COUN-
SEL, MR. DAVIDSON S. EHLE, III OF GRETNA, LA; DAVID E. LAFARGUE, REPRESENT-
ING THE STATE OF LOUISIANA, WAS PRESENT IN COURT. MOTION TAKEN UP, EVI-
DENCE WAS ADDUCED, ARGUMENT WAS PRESENTED BY ASSISTANT DISTRICT ATTORNEY
DAVID E. LAFARGUE AND BY COUNSEL FOR DEFENDANT, DAVIDSON S. EHLE, III,
AND MOTION WAS SUBMITTED. THE COURT, FOR ORAL REASONS ASSIGNED, DENIED
DEFENDANT'S APPLICATION, TO WHICH RULING OF THE COURT COUNSEL FOR DEFENDANT
OBJECTED AND GAVE ORAL NOTICE OF HIS INTENTION TO APPLY FOR WRITS.
                              \* \* \* \*

                    THIS CERTIFIES THAT THE FOREGOING IS A
                    TRUE AND CORRECT EXTRACT OF THE MINUTES
                    OF THIS COURT FOR THE DATE OR DATES IN-
                    DICATED.
                    MARKSVILLE, LOUISIANA THIS 21st DAY
                    OF _August_, 2001.

                    _____
                    DEPUTY CLERK
                    12TH JUDICIAL DISTRICT COURT

G

COURT OF APPEAL

THIRD CIRCUIT

STATE OF LOUISIANA

---

NO.

---

STATE OF LOUISIANA,
                                    Respondent

VERSUS

CHRISTIE LYNN CHERAMIE
                                    Defendant/Applicant

---

ON REVIEW FROM THE RULING/JUDGMENT
OF THE HONORABLE TED R. BROYLES
IN CRIMINAL DOCKET 79, 678 B OF THE
12ᵀᴴ JUDICIAL DISTRICT COURT FOR
THE PARISH OF AVOYELLES DENYING
THE MOTION TO WITHDRAW GUILTY PLEA
AND/OR CORRECT ILLEGAL SENTENCE

---

APPLICATION OF CHRISTIE LYNN CHERAMIE
FOR SUPERVISORY WRIT OF REVIEW

---

Respectfully submitted:

EHLE & HESNI, INC.

DAVIDSON S. EHLE, III      (#22045)
MICHELLE H. HESNI      (#26655)
407 Huey P. Long Avenue
Gretna, Louisiana 70053
Telephone: 504/366-2020
*Attorneys for Christie Lynn Cheramie, Defendant/Applicant*

## INDEX

|   |   | Page |
|---|---|---|
| 1. | Index | ii |
| 2. | Statement of Jurisdiction | 1 |
| 3. | Statement of the Case | 2 |
| 4. | Issue(s) | 5 |
| 5. | Assignment of Error | 6 |
| 6. | Argument | 7 |
| 7. | Conclusion | 10 |
| 8. | Verification | 11 |

Exhibits:

A.    Indictment

B.    Docket Master

C.    *State v. Cheramie* Boykinization and Sentencing

D.    Commitment to DOC

E.    Motion to Withdraw Guilty Plea and/or to Correct Illegal Sentence and Incorporated Memorandum

F.    *State v. Cheramie* Transcript of Evidentiary Hearing on Motion to Withdraw Guilty Plea

G.    *State v. Cheramie* Court Minutes

H.    Judgment

I.    Notice of Intent

## STATEMENT OF JURISDICTION

Jurisdiction to consider this Application for Supervisory Writ of Review is conferred upon this Honorable Court by Louisiana Constitution of 1974 Article 5, Section 10.

## STATEMENT OF THE CASE

The applicant, Christie Lynn Cheramie, was indicted on February 23, 1994 in the 12th Judicial District Court for committing First Degree Murder (Exhibit A). On June 22, 1994, the sixteen (16) year old defendant pled guilty to Second Degree Murder during the third day of jury selection (Exhibit B). Specifically, the Applicant's trial counsel informed the Court that after the selection of eight (8) jurors and negotiations with the District Attorney's office she would enter a guilty plea to Second Degree Murder (Exhibit C, Transcript I, page 4). The Court swore in the witness who explained she was sixteen (16) years old and possessed a seventh (7th) grade education (Tr. I, pp. 4-5). The Respondent acknowledged being present in Court for the two days of jury selection (Tr. I, p. 6). The District Court's Boykin examination included the following colloquy:

Q.   Since we have gone through two and a half days into a trial, already, I feel certain that you understand that you have a right to a trial, but, nevertheless, part of this is to ask you: Do you understand that you have the right to continue your plea of not guilty and have trial, do you understand that?

A.   Yes sir.

Q.   And, at that trial, you could not be found guilty unless the State would prove your guilt beyond a reasonable doubt, do you understand that?

A.   Yes sir.

Q.   And, at that trial, your lawyers would have the right to cross examine any witnesses who would testify against you, do you understand that?

A.   Yes sir.

Q.   And, at that trial, you would not be required to present evidence if you didn't want to, but you could present evidence if you wanted to, do you understand that?

A.   Yes sir.

Q.   And, at that trial, your lawyers would have the right to subpoena witnesses to testify, and they would be required to appear and testify, even if they didn't want to, do you understand that?

A.   Yes sir.

Q.   You have to answer loud enough, cause we have to make a record. And, at that trial, you would not have to be a witness, yourself, if you didn't want to, but you could be a witness if you wanted to, do you understand that?

A.   Yes sir.

Q.   Do you understand that by pleading guilty to. the reduced charge of SECOND DEGREE MURDER, that you are giving up your right to a trial; you're giving up your right to confront and cross-examine the witnesses against you, and you are giving up the right not to incriminate yourself? Do you understand these things?

A.   Yes sir.

(Tr. I, pp. 8-9).

The Applicant's trial counsel both informed the Court that they spoke with the Applicant and

2

her mother for two hours that morning and they felt she understood the negotiations for Second Degree Murder (Tr. I, pp. 11-12). After a recital of the facts of the homicide by the State, the District Court found that: "[t]he plea is knowingly, intelligently and voluntarily entered, and that there is a factual basis for the plea. The Court therefore accepts the plea of guilty" (Tr. I, p.15). Thereafter, the Applicant was sentenced to life imprisonment at hard labor (Tr. I, pp. 16-17 and Exhibit D).

The instant application arises from the May 14, 2000 filing, by the Applicant, seeking to withdraw her guilty plea and correct her illegal sentence (Exhibit E). The substance of the Motion was the District Court's failure to inform the Applicant of her right to trial by jury. (Id.) An evidentiary hearing was held on August 1, 2001 (Exhibit F, Tr. II). The State, ignoring the styling of the Applicant's pleading, asserted the three-year prescriptive period for Post-Conviction Relief (Tr. II, P. 6).

Christie Lynn Cheramie testified that at the time of her Boykin examination she was unaware of her right to a trial by jury (Tr. II, p. 13). On cross-examination, the applicant stated that had she understood her right to a trial by jury she would not have pled guilty (Tr. II, pp. 13-14). The Applicant reiterated, while remaining under cross-examination, that she "... didn't understand what was going on" (Tr. II, p.14). Specifically, when queried by the Court, the Applicant recalled the individual jurors testifying on the witness stand about the death penalty, but she maintained that no one explained to her the right to a jury trial (Tr. II, pp. 14-15).

The witness recalled being told by her lawyers that if she did not plead guilty to Second Degree Murder, three of her family members would be imprisoned (Tr. II, p.16). Ms. Cheramie explained she felt pressured and threatened at the time of the guilty plea (Tr. II, pp. 16-17).

The Honorable William J. Bennett was called by the State of Louisiana and he acknowledged being appointed to represent the Applicant in 1994 as a result of the First Degree Murder charge (Tr. II, p. 20). The Judge corroborated the Applicant's testimony that the plea discussions with the District Attorney's office included the possibility her mother would be charged as an accessory after the fact (Tr. II, p. 22). The Judge, with regards to the Applicant's appreciation of her right to jury trial, testified that she knew what was going on as " . . . best as any sixteen year-old could" (Tr. II, p. 23). The District Court denied the Motion, noting:

> The presiding Judge . . . sufficiently informed the accused of her right to a trial by jury. Surely, it might have been articulated with more... in more detail, with more precision perhaps. I think it was a Judge

Cordosa who said: 'There is a detail that defeats itself' (Tr. II, p. 28).

The District Court entered a Judgment denying the Motion to Withdraw Guilty Plea on September 19, 2001 (Exhibit H). The Applicant's Writ was ordered returnable to this Honorable Court by October 19, 2001. (Exhibit I).

## ISSUE

Whether or not the Applicant's guilty plea to Second Degree Murder is constitutionally infirm because the <u>Boykin</u> colloquy is inadequate, i.e., no articulated waiver of the right to a trial by jury.

## ASSIGNMENT OF ERROR

The District Court, with all due respect, erred when it concluded the Applicant had been sufficiently informed of her right to a trial by jury in light of her age (16) and her educational background (7th grade).

## ARGUMENT

The Applicant, with all due respect, contends that the Boykin colloquy herein failed to obtain from the sixteen year-old defendant with a seventh grade education an articulated waiver of her right to a jury trial. The totality of the circumstances underlying the teenager's guilty plea fails to persuade that the plea is constitutional. Even Judge Bennett confirmed that the Applicant's appreciation of her rights was degraded by her age and the additional plea negotiation component of her mother's threatened prosecution as an accessory to the charged homicide.

In *State v. Galliano* 396 So.2d 1288 (La. 1981) the Supreme Court, addressing the question of the defendant's Motion to Withdraw Guilty Plea stated:

> "Because a plea of guilty waives an accused's fundamental right to a jury trial, right to confront his accusers and privilege against self incrimination, due process requires as a prerequisite to its validity that the plea be a voluntary and intelligent relinquishment of known rights. *McCarby v. United States*. The record of the plea must show that the defendant was informed of these three basic rights and the knowingly and voluntarily waived them. *State v. LaFleur*, 391 So.2d 445 (La. 1989)."

In *State v. Guzman*, 665 So.2d 512 (La.App.5th Cir. 1995) the court observed with regards to a Motion to Withdraw Guilty Plea filed after sentencing, that:

> Even after sentencing, if a trail court finds "either that a plea of guilty was not entered freely and voluntarily or that the Boykin colloquy was inadequate, and that the plea, therefore, is constitutionally infirm, the Trial Court retains the authority to vacate the sentence and set aside the plea, notwithstanding Article 559." *State v. Lewis*, 421 So.2d 224, 226 appeal after remand, 461 So.2d 1250 appeal after remand, 482 So.2d 659 denied, 487 So.2d 437.

In *State v. Arnold*, 706 So.2d 578 (La.App.2nd Cir.1998), the Court of Appeal explained the right to a jury trial as:

> The Sixth and Fourteenth Amendments to the U.S. Constitution guarantee criminal defendants the right of trail by jury for "serious crimes." *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Similarly, Article 1, § 17 of the Louisiana Constitution stipulates that crimes for which the punishment may be confinement for more than six months must be tried by a jury except when, in non-capital cases, the defendant knowingly and intelligently waives his right to a jury trial. See also La.C.Cr.P. arts. 780 and 782. The waiver of the right to a trial by jury is never presumed from a silent record. *State v. Clay*, 623 So.2d 211, 217 (La.App.2d.Cir 1993); *State v. Barron*, 540 So.2d 1023, 1025 (La.App.2d.Cir. 1989). Each of the crimes with the defendant was charged carried the right to a trial by jury.
>
> The Supreme Court has refused to adopt an absolute rule that no jury waiver can be effective unless the record reflects that the accused was

7

personally informed by the Judge of his right to a jury trial. *State v. Phillips*, 365 So.2d 1304 (La.1978), cert. denied 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979). Nevertheless, in *State v. Wilson*, 437 So.2d 272 (La. 1983), the Supreme Court said the when a defendant waives such a valuable right, the trial judge should advise the defendant of his right to trial by jury and require the defendant to personally waive the right either in writing or by oral statement in open court on the record. A knowing and intelligent waiver of that right will not be presumed from a silent record.

Likewise, an incomplete waiver of the right to a trial by jury will not suffice to support a valid Boykin waiver. The Supreme Court of Louisiana in *State v. Williams*, 384 So.2d 779 (La. 1980) addressed the constitutionality of a plea colloquy remarkably similar to the rights colloquy in this case. The specific similarity between the two colloquies is that both judges merely informed the defendant of a right to trial, without including the fundamental right of all defendants facing a felony trial to a jury trial. In *Williams*, supra, the defendant's conviction and sentence were reversed by the Court because the trial court's generalized inquiry which focused, like in the case, sub judice, on the assumption that defense counsel's prior explanation of the Boykin rights to his client was inadequate. The Court, in *Williams*, supra, held that:

> The resolution of the issue here rests on our interpretation of the requirements for a valid guilty plea handed down by the United States Supreme Court in *Boykin v. Alabama*, supra. The Court held that due process requires an affirmative showing that a defendant knowingly and voluntarily waived those rights. Such waiver, according to Boykin, cannot be presumed and reversible error is presented when "the record does not disclose that the defendant voluntarily and understandingly entered his please of guilty." Boykin, supra, 395 U.S. at 244, 89 S.Ct. At 1713. Therefore, a record should be left which is "adequate for any review that may be later sought (citations omitted) and forestalls the spin-off of collateral proceedings that seek to probe murky memories." Id. The only realistic means of assuring that the trial judge leaves a record adequate for any later review is to require that the record contain on its face direct evidence that the accused was made award by the trail judge of his right to jury trial, his right to confront accusers, and his privilege against compulsory self-incrimination. See In re Tahl, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449 (1969). To allow any more indirect showing would be to satisfy Boykin's requirement of an affirmative showing of defendant's waiver of his constitutional rights by means of "murky memories" exactly what Boykin indicates is insufficient.

> . . . .

> The colloquy found in the record between the trial judge and defendant Williams is not sufficient to affirmatively establish the defendant's knowing and voluntary waiver of his constitutional rights. The trial judge relied ultimately on Williams' assertion that he understood the defends attorney's out of court explanation of the plea and its consequences. The trial judge did not make an independent determination that the defendant understood what the plea connotes

8

and its consequences. The record does not disclose that the defendant knowingly and voluntarily waived his constitutional rights, including his right to trial by jury, his right to confront accusers, and his privilege against compulsory self-incrimination. Therefore, the due process requirements of <u>Boykin</u> require that the guilty plea be vacated, the conviction and sentence reversed, and the matter remanded to the district court.

The District Court, with all due respect, engaged in the very type of presumption of understanding which <u>Boykin</u> and its progeny repudiates. (See Exhibit F, p.28). The District Court conceded that the trial court failed to specifically inquire as to whether the applicant knew she had a right to a trial by jury on the <u>reduced charge</u> of Second Degree Murder. (Id.) The District Court, by resorting to a totality of circumstances analysis as to the validity of the Applicant's Second Degree Murder plea <u>erroneously presumed</u> the satisfaction of the <u>Boykin</u> requirement of a right to trial by <u>jury</u>. The Applicant was never informed by the trial court, of her right to a trial by jury, and this grave defect mandates her guilty plea to Second Degree Murder be vacated.

## CONCLUSION

The applicant, Christie Lynn Cheramie, respectively concludes that the record of her guilty plea to the reduced charge of Second Degree Murder fails to disclose a knowing and intelligent waiver of her right to a trial by jury. The waiver of such a fundamental right shall not be presumed, especially when the defendant is a sixteen year-old, visibly shaken teen-ager with a seventh grade education being threatened by the District Attorney with her own mother's incarceration. In light of the foregoing "the due process requirements of Boykin" dictate the Applicant's guilty plea to Second Degree Murder be **VACATED.**

Respectfully submitted:

**EHLE & HESNI, INC.**

**DAVIDSON S. EHLE, III (#22045)**
**MICHELLE H. HESNI (#26655)**
407 Huey P. Long Avenue
Gretna, Louisiana 70053
Telephone: 504/361-0636
*Attorneys for Christie Lynn Cheramie*

## VERIFICATION

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and qualified in accordance with law in and for the STATE and PARISH aforesaid,

Personally came and appeared:

DAVIDSON S. EHLE, III

who having been first sworn, deposed and stated that:

1.    He is of counsel of applicant in these proceedings;

2.    All of the allegations contained in the above and foregoing Supervisory Writ are true and correct to the best of his knowledge, information and belief;

3.    All of the documents are exhibits attached hereto and filed herewith are true and correct copies of the original documents filed in the record of said proceedings;

4.    A copy of this Supervisory Writ has been served on the Honorable Ted R. Broyles, Judge, Section "B", Twelfth Judicial District Court, Parish of Avoyelles, State of Louisiana, located at 312 North Main Street, Marksville, Louisiana 71351 and to the Honorable David Lafargue, Assistant District Attorney for the Parish of Avoyelles, located at Post Office Box 427, Marksville, Louisiana 71351 by placing same in United States Postal Service.

DAVIDSON S. EHLE, III

SWORN TO AND SUBSCRIBED BEFORE BE THIS _19_th DAY OF OCTOBER, 2001.

NOTARY PUBLIC
(My commission is for life)

11

United States Postal Service®

DELIVERY CONFIRMATION™

0305 0630 0000 0761 8632

COPY DISTRICT OF LOUISIANA
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY 1 5 2006

CLERK

TO USE:

1. COMPLETE ADDRESS LABEL AREA
Type or print return address and

Label 228  June 2004

2. PAYMENT METHOD

3. ATTACH LABEL (optional)



PRIORITY
MAIL
UNITED STATES POSTAL SERVICE

www.usps.com

From:

Christi Charamie # 341629
Po Box 26
St Gabriel, La 70776

TO:

United States District Court
Western District
Alexandria Division
Po Box 1269
Alexandria La 71309

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail.
Misuse may be a violation of federal law.

Charles, LA
Charles, LA 70
Charles, LA
www.usps.com

Charles, LA 70

JANUARY 2004
USPS